UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) ) ) | CASE NO. | 19-50380 (JAM) |
| FERNANDO NEUPMANN,<br>    DEBTOR. | ) ) ) | CHAPTER | 7 |
| SANJAY GUPTA, M.D.,<br>    PLAINTIFF, | ) ) ) ) | | |
| v. | ) ) | ADV. PRO. NO. | 19-5022 (JAM) |
| FERNANDO NEUPMANN,<br>    DEFENDANT. | ) ) ) ) | RE: ECF NO. | 29 |

**APPEARANCES**

| | |
|---|---|
| Irve J. Goldman<br>Pullman & Comley, LLC<br>850 Main Street<br>Bridgeport, CT 06610 | *Attorney for the Plaintiff* |
| John J. Bowser<br>Collins Hannafin, P.C.<br>148 Deer Hill Avenue<br>Danbury, CT 06810 | *Attorney for the Defendant* |

**MEMORANDUM OF DECISION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, United States Bankruptcy Judge

**I.    BACKGROUND**

On August 30, 2019, Sanjay Gupta, M.D. (the "Plaintiff") commenced this adversary proceeding against Fernando Neupmann (the "Defendant" or the "Debtor") by filing a seven-count complaint (the "Complaint"). Counts One through Five of the Complaint allege that a debt owed to the Plaintiff by the Defendant is nondischargeable pursuant to 11 U.S.C. §§

523(a)(2)(A) and (6).  Count Six of the Complaint objects to the Debtor's discharge under 11 U.S.C. § 727(a)(3).  Count Seven of the Complaint objects to the Debtor's discharge under 11 U.S.C. § 727(a)(4).

On September 9, 2020, the Plaintiff filed a Motion for Summary Judgment on Count Six of the Complaint (the "Motion for Summary Judgment," ECF No. 29).  On September 29, 2020, the Court granted the Defendant's request for an extension of time to file an objection to the Motion for Summary Judgment to October 15, 2020.  The Defendant did not file an Objection to the Motion for Summary Judgment.

## II.    JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant proceeding pursuant to 28 U.S.C. § 1334(b).  The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(1) and the District Court's General Order of Reference dated September 21, 1984.  This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J).

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056.  Rule 56 directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "Upon consideration of a motion for summary judgment, 'the judge's

function . . . is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Delaney*, 504 B.R. at 746 (quoting *Anderson*, 477 U.S. at 249). "[T]he court 'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Mex. Constr. & Paving v. Thompson (In re Thompson)*, 511 B.R. 20, 24 (Bankr. D. Conn. 2014) (quoting *Flaherty v. Lang*, 199 F.3d 607, 615 (2d Cir. 1999)).

At the summary judgment stage, the moving party must show there are no material issues of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992); *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015)). Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner (In re Affinity Health Care Mgmt., Inc.)*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

## IV. UNDISPUTED FACTS

Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut[1] requires that a party moving for summary judgment file a Local Rule 56(a)(1) Statement of Undisputed Material Facts. *See* D. Conn. L. R. 56(a)(1). Local Rule 56(a)(2) requires that a party opposing a motion for summary judgment file a Local Rule 52(a)(2) Statement of Facts in Opposition to Summary Judgment. *See* D. Conn. L. R. 56(a)(2).

---

[1] Local Rule of Bankruptcy Procedure 7056-1 adopts the United States District Court for the District of Connecticut's Local Rule 56.

3

Each material fact set forth in a movant's Statement of Undisputed Material Facts and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule." *See* D. Conn. L. R. 56(a)(1); *see also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-47 (Bankr. D. Conn. 2014). Here, the Plaintiffs filed the Local Rule 56(a)(1) Statement of Undisputed Material Facts along with the Motion for Summary Judgment (the "Plaintiffs' Rule 56(a)(1) Statement"). The Defendant has not responded to the Motion for Summary Judgment and has failed to file a Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment despite being given an extension of time in which to do so. Therefore, the material facts set forth in the Plaintiffs' Rule 56(a)(1) Statement supported by the evidence are deemed admitted.

The Court finds the following undisputed facts:[2]

1. On August 7, 2013, the Plaintiff hired the Defendant and/or the Defendant's Company, Neupmann Fine Carpentry LLC ("NFC"), to work as a general contractor for a substantial home renovation project to be performed at the Plaintiff's home (the "Project"). The Plaintiff's home is located in the Town of Ridgefield's Historic District at 531 Main Street, Ridgefield, CT (the "Gupta Residence").

2. The contract for the Project was entered into by the Plaintiff and "Fernando Neupmann / Neupmann Fine Carpentry LLC" (the "Contract"). *See* Ex. B to the Complaint.

3. In general, the Project involved gutting and renovating the entire interior and exterior of the Gupta Residence, constructing an addition to the Gupta Residence, installing new

---

[2] All facts are derived from the Plaintiffs' Rule 56(a)(1) Statement and the exhibits attached to the Motion for Summary Judgment unless otherwise indicated.

electrical, HVAC, gas lines, and plumbing systems, and performing concrete, masonry, trim, and framing work including installation of roofing, siding, doors, and windows.

4. Pursuant to the Contract, the cost of the Project was $647,877.50. The Plaintiff, however, ended up paying the Defendant over $773,000 for the Project and spent an additional $168,000 in order to correct the Defendant's mistakes and to obtain a certificate of occupancy.

5. As a result of the dispute between the parties relating to the Project, the parties participated in a seven-day arbitration. On May 31, 2018, an arbitrator's award was issued in the Plaintiff's favor finding the Defendant liable to the Plaintiff for damages in the amount of $354,583.92 (the "Arbitrator's Award").

6. On August 6, 2018, the Connecticut Superior Court confirmed the Arbitrator's Award and made it a Judgment of the Superior Court. *See Gupta v. Neupmann*, No. DBD-CV-16-5010349-S.

7. The Defendant filed his Chapter 7 petition on March 22, 2019.

8. The Defendant's home country is Brazil. He completed 2 years of college in Brazil where he studied computer programming.

9. The Defendant came to the United States in 1994 and began to work in the construction field. He was employed by Manny Pires Construction for nine years, starting as a trim contractor and then becoming a supervisor.

10. In January 2005, the Defendant formed NFC. At the time NFC was formed, through at least 2016, the Defendant was NFC's sole member.

11. In October 2017, the Defendant transferred a 50% ownership interest in NFC to his spouse, Fabiana da Cruz.

12. NFC was engaged in business from 2005 through at least 2018. Its principal activity was providing home improvement services.

13. During the time NFC was in business, the Defendant was in charge of its operations and the manner in which NFC kept records of its business transactions, income, and expenses. The Defendant decided which of NFC's records to keep and which of its records to discard.

14. At no time did NFC prepare or have prepared for it any profit and loss statements, balance sheets, or statements of cash flow.

15. Neither the Defendant nor NFC possess any profit and loss statements, balance sheets, or statements of cash flow with respect to NFC.

16. The Defendant's bookkeeping for NFC consisted of maintaining physical file folders for each of its projects, except for smaller jobs. After one year, the Defendant would dispose of this paperwork.

17. After the Defendant's tax returns were prepared and filed, the Defendant would discard the underlying documents used to prepare the returns.

18. In this adversary proceeding, the only documentation the Defendant produced to the Plaintiff evidencing the financial results of NFC's business operations and the income it received and the disbursements it made consists of (i) personal tax returns and a partnership tax return for NFC for the year 2018 (the "Tax Returns"); (ii) tax preparation summaries for the years 2015-2018 (the "2015-2018 Tax Preparation Summaries); (iii) NFC's bank account records for accounts maintained at People's Bank ending in 3094, 8368, and 7859 (the "NFC Account Records"); and (iv) check or transaction registers for certain bank accounts, some of which do not identify any particular accounts (the "Check Register Documentation").

19. The NFC Account Records contain entries for deposits that do not identify a deposit source. The NFC Account Records also contain entries for ACH withdrawals to pay credit cards debts without any identification of the purpose for which, or the merchant to whom, the credit card debt was incurred.

20. The NFC Account Records do not include any deposit slips or cancelled checks, with the exception that the production of documents relating to the account ending in 8368 included copies of cancelled checks.

21. The Check Register Documentation covers only the period of March 2013 through September 2015. Much of the Check Register Documentation does not identify the account number to which the document corresponds.

22. Of the amount the Plaintiff paid the Defendant for his work on the Project, the Plaintiff paid $90,000.00 in cash to the Defendant at the Defendant's request. In the interactions the Plaintiff had with the Defendant on the topic of cash payments, the Defendant stated that he frequently had customers make cash payments for his contracting work and that he frequently paid his employees or subcontractors in cash.

23. At his 2004 Examination, which was taken on June 26, 2019, the Defendant testified that he sometimes paid his employees in cash.

## V. DISCUSSION

In Count Six of the Complaint, the Plaintiff objects to the Debtor's discharge under 11 U.S.C. § 727(a)(3). After careful review of the record of this case and the relevant legal authority, and under the specific facts and circumstances present here, the Court concludes that there is no genuine issue of material fact with respect to the Plaintiff's section 727(a)(3) claim. Therefore, the Plaintiff is entitled to summary judgment on Count Six of the Complaint.

Although an essential purpose of the Bankruptcy Code and the privilege of discharge "is to allow the 'honest but unfortunate debtor' to begin a new life free from debt," in the interest of protecting creditors, there are exceptions to discharge under specific circumstances enumerated in section 727. *In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991)). Section 727 imposes "an extreme penalty for wrongdoing" and "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." (*Id.*) (internal quotation marks omitted). The plaintiff must show by a preponderance of the evidence that the defendant is not entitled to a discharge. *See In re Gardner*, 384 B.R. 654, 662 (Bankr. S.D.N.Y. 2008); *In re Kurtaj*, 284 B.R. 528, 529 at n. 1 (Bankr. D. Conn. 2002).

> Pursuant to section 727(a)(3), a debtor shall be denied a discharge if
>
> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The purpose of section 727(a)(3) "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *Cacioli*, 463 F.3d at 234 (citing *In re Underhill,* 82 F.2d 258, 260 (2d Cir. 1936)). In addition, section 727(a)(3) "ensures that 'creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history.'" (*Id.*) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)).

Courts employ a two-step approach in analyzing whether a debtor should be denied a discharge under section 727(a)(3). *Id.* at 235. First, "[t]he initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *Id.* Second, "[i]f the creditor

shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *Id.* It is not necessary to show that the debtor had an intent to conceal his financial information to support a denial of discharge under section 727(a)(3). *In re Sethi*, 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000).

The Bankruptcy Code does not define what constitutes a justification for a failure to keep books and records under section 727(a)(3). Whether a debtor's failure to keep books and records is justified is "a question in each instance of reasonableness in the particular circumstances." *Cacioli*, 463 F.3d at 235. A debtor "is not required to keep an impeccable system of bookkeeping or records so complete that he can satisfy an expert in business." *Sethi*, 250 B.R. at 838. Rather, the inquiry is whether "there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *Id.*

> When examining the debtor's circumstances, courts assess the following factors:
>
> 1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;
> 2. The amount of the debtor's obligations;
> 3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;
> 4. The debtor's education, business experience and sophistication;
> 5. The customary business practices for record keeping in the debtor's type of business;
> 6. The degree of accuracy disclosed by the debtor's existing books and records;
> 7. The extent of any egregious conduct on the debtor's part; and
> 8. The debtor's courtroom demeanor.

*Id.*

Section 727(a)(3) does not provide for a specific time period for which a debtor must account for his pre-petition financial condition. *See In re Racer*, 580 B.R. 45, 53 (Bankr.

E.D.N.Y. 2018). Courts have found that a debtor "should account for his business and personal transactions for a reasonable period prior to the commencement of the bankruptcy filing," and that the determination "of what constitutes a reasonable period prior to the filing must be measured on a case-by-case basis." *Id.* "Courts have extended their inquiry under § 727(a)(3) to as far as ten years before the commencement of the case." *Id.*

In addition, when the individual debtor is a sole or active part owner of a business entity, the debtor is required under section 727(a)(3) to preserve business records necessary to ascertaining the debtor's financial condition. *See In re Spitko*, 357 B.R. 272, 306 (Bankr. E.D. Pa. 2006) (explaining that when a debtor is engaged in numerous business transactions, "the failure to keep or produce any records regarding those transactions may be treated as a violation of § 727(a)(3)."); *In re Singh*, 568 B.R. 187, 200 (Bankr. E.D.N.Y. 2017) (finding that when the debtor was an active part owner of a closely held corporation, and that his personal financial condition was rooted in the value of the company, the debtor should have preserved records related to the value of his interest in the business); *see also In re White*, No. 12-11847 (SMB), 2015 WL 9274771, at *3 (Bankr. S.D.N.Y. Dec. 18, 2015) (noting that "although § 727(a)(3) focuses on records relating to the debtor's personal financial affairs, [the debtor's] failure to keep adequate financial records regarding the business transactions of a closely held corporation that are necessary to determine [the debtor's] personal financial affairs may result in the denial of a discharge.") (citing cases).

The record before the Court establishes that the Debtor's discharge should be denied under section 727(a)(3) as a matter of law. It is undisputed that the only records the Defendant has produced relating to the financial affairs of NFC are the Tax Return, the 2015-2018 Tax Preparation Summaries, the NFC Account Records, and the Check Register Documentation. It is

also undisputed that the NFC Account Records contain entries for deposits that do not identify a deposit source and contain entries for ACH withdrawals to pay credit card debt without further information regarding the purpose for which, or the merchant to whom, the credit card debt was incurred. In addition, it is undisputed that the NFC Account Records do not include any deposit slips and include copies of cancelled checks for only one of the accounts. Finally, it is undisputed that the Check Register Documentation only covers the period of March 2013 through September 2015, well before the Debtor's petition date.

The record establishes that the Defendant was not able to provide business transaction records such as payroll records for NFC or records of NFC's receipt and expenditure of cash payments despite the Defendant's representations to the Plaintiff that he sometimes had customers make cash payments for his contracting work and his testimony at the 2004 Examination that he sometimes paid his employees or subcontractors in cash. The record also establishes that the Defendant did not keep information regarding NFC's profits and losses or statements of cash flow. The record additionally establishes that the Defendant would dispose of paperwork relating to NFC's projects after one year, and would discard of the documents used to prepare his tax returns after their preparation.

The documents the Defendant has provided are insufficient as a matter of law to enable the trustee or a creditor to ascertain NFC's business condition or financial transactions. "Courts have consistently held that in order to adequately ascertain a debtor's financial condition, particularly where the debtor operated a business during the relevant time period, the debtor must provide documents from which individual business transactions can be identified and substantiated." *In re Mitsopoulos*, 487 B.R. 604, 612 (Bankr. E.D.N.Y. 2013) (citing cases). When, as here, the bank statements a debtor produces for a business the debtor owns "do not

identify the sources of deposits" and the debtor does not "provide cancelled checks corresponding to the transactions on the bank statements, it is impossible to ascertain the purposes for or disposition of funds withdrawn from the account." *Id.* at 613. In addition, when a debtor cannot produce "even the most basic records" for a business he owns, such as "balance sheets or other accounting records," or complete bank statements for the business account, the debtor has not met his obligations under section 727(a)(3). *See In re Devani*, 556 B.R. 37, 43 (Bankr. E.D.N.Y. 2016) (granting summary judgment on a section 727(a)(3) claim when debtor produced only partial personal and business bank account records and only one business and one personal tax return). Finally, "tax returns *and their supporting documentation* are considered necessary to ascertain a debtor's financial condition." *See Mitsopoulos*, 487 B.R. at 613 (emphasis added); *see also Schackner v. Breslin Realty Dev. Corp.*, No. 11-CV-2734 JS, 2012 WL 32624, at *5 (E.D.N.Y. Jan. 5, 2012) (noting that "Courts in the Second Circuit have consistently denied discharge on summary judgment when certain categories of documents essential to determining a debtor's history are missing—specifically, tax returns and their underlying financial records.").

In this case, the Plaintiff has met his burden of establishing a *prima facie* case that the Defendant has failed to keep or preserve the necessary documents under section 727(a)(3). The Defendant has not offered sufficient justification for his failure to do so. The Defendant had an opportunity to provide a justification by responding to the Motion for Summary Judgment. Despite being given an extension of time in which to respond to the Motion for Summary Judgment, the Defendant has not done so. Even if the Defendant has turned over the documentation he has in his possession, this does not necessarily meet the requirements of a debtor in bankruptcy. *See Devani*, 556 B.R. at 43 (finding that when the debtor "made no

attempt to fulfill his disclosure obligations as a debtor in bankruptcy other than turning over what he happened to have in his possession," the debtor's disclosure was "not sufficient").

Accordingly, the Plaintiff has established as a matter of law that the Defendant is not entitled to a discharge pursuant to section 727(a)(3). *See Sethi*, 250 B.R. at 839 (denying debtor's discharge under section 727(a)(3) when the only documents provided, federal tax returns for four years and a W-2, provided "no assistance in understanding what happened to the debtor's assets, or how the proceeds of those assets were disposed of"); *In re Antoniou*, 515 B.R. 9, 21-22 (Bankr. E.D.N.Y. 2014) (granting summary judgment on a section 727(a)(3) claim when the debtor failed to produce bank accounts records that provided "information about the source or use of the funds" deposited and withdrawn, and did not provide complete information regarding cash transactions); *In re Bailey*, 375 B.R. 410, 419 (Bankr. S.D. Ohio 2007) (granting summary judgment on a section 727(a)(3) claim when the debtor failed to provide complete records of his company's business transactions); *Kurtaj*, 284 B.R. at 531 (denying discharge under section 727(a)(3), finding insufficient the debtor's explanation for her failure to keep financial records "was that it was her routine practice to destroy them").

## VI. **CONCLUSION**

For the reasons set forth above, the Plaintiff is entitled to a determination as a matter of law that the Defendant's discharge is denied pursuant to 11 U.S.C. § 727(a)(3).

Accordingly, it is hereby

**ORDERED:** The Plaintiff's Motion for Summary Judgment on Count Six of the Complaint is GRANTED; and it is further

**ORDERED:** A separate judgment as to the denial of the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(3) will enter; and it is further

**ORDERED:** The Court will hold a Status Conference on December 14, 2021 at 11:00 a.m. to discuss the remaining counts of the Complaint.

Dated at Bridgeport, Connecticut this 28th day of October, 2021.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut